# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**AARON E. HAITH**
Choate & Haith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY LADANA HAZELWOOD, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1305-MI-239 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Cause No. 49C01-1207-MI-28873

**February 5, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Timothy Ladana Hazelwood ("Hazelwood") filed a petition in Marion Circuit Court seeking to rescind the lifetime suspension of his driving privileges. The trial court denied the petition, concluding that Indiana Code sections 9-30-10-14 and 9-30-10-15 prohibited it from reinstating Hazelwood's driving privileges because he had been convicted of Class C felony operating a vehicle after his license had been forfeited for life. On appeal, Hazelwood claims that this statutory provision is unconstitutional as applied to him. Concluding that driving is a privilege and not a right and that the suspension of Hazelwood's driving privileges is not punitive, we affirm.

### Facts and Procedural History

Hazelwood is a recidivist traffic violator, having his driving privileges suspended seventeen times since 1991. On January 11, 1996, Hazelwood was determined to be a habitual traffic violator ("HTV"), and his license was suspended for ten years, i.e., until January 10, 2006. Undeterred by this suspension, Hazelwood continued to drive, and on December 11, 1997, he was convicted of Class D felony operating a vehicle while suspended as an HTV. This resulted in Hazelwood's driving privileges being suspended for life. But yet again, this did not deter Hazelwood from driving, and he was convicted on July 31, 1998, of Class C felony operating a vehicle after his license had been forfeited for life and was sentenced to three years incarceration.

On July 20, 2012, Hazelwood filed a verified petition for rescission of his lifetime suspension and to reinstate his driving privileges. After the State responded, the trial court conducted an evidentiary hearing on the matter on February 11, 2013. At the hearing, Hazelwood testified that the suspension imposed a serious hardship on him, his

family, and his ability to work. He also presented evidence that he has been rehabilitated and would no longer pose a threat to the safety of others if allowed to drive. On April 22, 2013, the trial court entered findings of fact and conclusions of law, which found that although Hazelwood had been a law-abiding citizen since his incarceration, Indiana Code section 9-30-10-14 prevented the trial court from reinstating his license and that this statute was not unconstitutional. Hazelwood now appeals.

**Discussion and Decision**

Generally, Indiana Code section 9-30-10-14 provides means by which a person whose driving privileges have been suspended for life may petition a trial court in a civil action for rescission of the suspension order and reinstatement of the person's driving privileges, provided that certain conditions have been met. One of these conditions is that the person "has never been convicted of an offense under section 17 of this chapter." I.C. § 9-30-10-14(a)(3). Similarly, Indiana Code section 9-30-10-15 provides that, before a trial court may order rescission of a lifetime suspension order and reinstate a person's driving privileges, the court must find by clear and convincing evidence several conditions, and again one of these conditions is "[t]hat the petitioner has never been convicted of an offense under section 17 of this chapter." I.C. § 9-30-10-15(b)(2). Section 17 of chapter 9-30-10 defines the crime of operating a motor vehicle while privileges are forfeited for life, and Hazelwood admits that he was convicted of this offense. Accordingly, Hazelwood acknowledges that, under the statutes as written, he cannot have his driving privileges reinstated. Instead, Hazelwood claims that this statutory prohibition is unconstitutional as applied to him in several respects.

3

The standard of review for claims that a statute is unconstitutional is well established: "every statute is presumed to comport with the Constitution until clearly overcome by a contrary showing." Schweitzer v. State, 700 N.E.2d 488, 490 (Ind. Ct. App. 1998), trans. denied (citing Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996)). "'The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party.'" Id. (quoting Boehm, 675 N.E.2d at 321). "If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute." Boehm, 675 N.E.2d at 321.

Hazelwood claims that the license reinstatement statute is not unconstitutional on its face but only as applied to him. A facial challenge to the constitutionality of a statute requires that the party claiming the unconstitutionality of the statute "demonstrate that there are no set of circumstances under which the statute can be constitutionally applied," whereas a challenge to the constitutionality of a statute as applied asks the reviewing court only to "declare the challenged statute or regulation unconstitutional on the facts of the particular case." Harris v. State, 985 N.E.2d 767, 774 (Ind. Ct. App. 2013), trans. denied.

Here, Hazelwood claims that by preventing him from ever having his driving privileges reinstated, the State is effectively continuing to punish him for his previous traffic-related offenses. This, he claims, violates the constitutional provisions providing

4

for rehabilitative, not retributive, justice; the provisions providing that penalties must be proportional to the crime; and the provisions prohibiting cruel and unusual punishment.

The first of these provisions is found in Article 1, Section 18 of the Indiana Constitution and provides, "The penal code shall be founded on the principles of reformation, and not of vindictive justice." However, it is well settled that Section 18 applies only to the penal code as a whole, not to individual sentences. Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008) (citing Scruggs v. State, 737 N.E.2d 385, 387 n.3 (Ind. 2000); Henson v. State, 707 N.E.2d 792, 796 (Ind. 1999)). And since Hazelwood brings only an as-applied challenge, this provision is inapplicable to his particular case. See id.

The next constitutional provision cited by Hazelwood is the proportionality requirement of Article 1, Section 16 of the Indiana Constitution, which provides, "All penalties shall be proportioned to the nature of the offense." Brown v. State, 856 N.E.2d 739, 740 (Ind. Ct. App. 2006). This court has repeatedly stated that the General Assembly has the primary responsibility for determining the appropriate penalties for crimes committed in this state. See id. (citing State v. Moss-Dwyer, 686 N.E.2d 109, 111 (Ind. 1997)). We are not at liberty to set aside a legislatively-sanctioned penalty merely because it seems too severe. Id. at 112. A criminal penalty violates the proportionality clause only when it is not graduated and proportioned to the nature of the offense. Id. (citing Conner v. State, 626 N.E.2d 803, 806 (Ind. 1993)).

In a similar vein, Hazelwood argues that the suspension of his driving privileges for life without the possibility of reinstatement is cruel and unusual punishment

5

prohibited by the Eighth Amendment to the United States Constitution and Article 1, Section 16 of the Indiana Constitution. The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 16 similarly reads, "Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted."

Hazelwood's arguments regarding these constitutional provisions are premised on his claim that the suspension of his driving privileges for life constitutes "punishment." Indeed, Hazelwood argues at some length that his lifetime suspension is a punishment. However, it is well settled that the suspension of driving privileges is not a punishment.

In Schrefler v. State, 660 N.E.2d 585 (Ind. Ct. App. 1996), we held that the suspension of the defendant's driving privileges did not act as a bar to subsequent prosecution under the constitutional prohibitions against double jeopardy. In so holding, we noted the long-standing proposition that "[t]here exists no absolute right to obtain and keep a driver's license in Indiana." Id. at 587 (citing Ruge v. Kovach, 467 N.E.2d 673, 677 (Ind. 1984)). Instead, driving privileges are an entitlement that may be withheld, suspended, or revoked by the State for reasons of public safety. Id. at 587-88. Indeed, "[t]he elaborate statutory scheme [governing driver's privileges] conditions the use of a driver's license on the observation of certain rules and operating standards meant for public safety; the suspension or revocation of the license merely signifies the failure of the licensee to comply therewith." Id. at 588. The suspension of driving privileges "was

6

designed to promote the State's interest in keeping its highways safe from intoxicated drivers." Id. (citing Ruge, 467 N.E.2d at 681). Importantly, we held:

> That the suspension of driving privileges has some punitive impact on the offender, and may be implemented as a part of sentencing upon criminal conviction, is merely incidental to the overriding remedial purpose of the statute. On this basis, we conclude that administrative suspension of a person's driving privileges upon a finding of probable cause that he operated a vehicle while intoxicated does not serve the goals of punishment.

Id.; see also Moala v. State, 969 N.E.2d 1061, 1067 (Ind. Ct. App. 2012) (noting that Schrefler "made clear" that "a license suspension is not punitive[.]"); Ruge, 467 N.E.2d at 681 (concluding that license suspension procedure was wholly civil in nature, and the implementation thereof did not constitute criminal punishment).

The same rationale applies here. Whether it be for life or for a more limited time, the suspension of one's driving *privileges* does not constitute punishment. Still, Hazelwood argues that the suspension of his driving privileges constitutes a punishment, citing Jensen v. State, 905 N.E.2d 384 (Ind. 2009). In Jensen, our supreme court considered a claim that certain amendments to the sex offender registration act, including a requirement of lifetime registration for sexually violent predators, did not violate the prohibition of *ex post facto* laws in the Indiana Constitution. Here, however, we are not faced with an *ex post facto* claim, and Jensen is not controlling.[1]

---

[1] Jensen addressed whether the statutory amendments at issue were punitive for purposes of the *ex post facto* clause using the following seven-factor test: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. Id. (citing Wallace v. State, 905 N.E.2d 371, 379 (Ind. 2009)). But even if this test did apply here, Hazelwood would not prevail.

7

Because the suspension of Hazelwood's driving privileges is not a punishment, his constitutional claims that the suspension is a disproportionate punishment and a cruel and unusual punishment necessarily fail. Accordingly, we affirm the judgment of the trial court denying Hazelwood's petition for reinstatement of his driving privileges.

Affirmed.

BRADFORD, J., and PYLE, J., concur.

---

First, Hazelwood's lifetime suspension imposes no affirmative obligation. And the only restraint imposed is on the privilege, not right, of driving. Next, suspension of driving privileges has not been historically regarded as punishment. Indeed, this court has repeatedly held that the suspension of driving privileges is not a punishment for purposes of double jeopardy. Moala, 969 N.E.2d at 1067; Schrefler, 660 N.E.2d at 587-88. Hazelwood makes no claim that there is any *scienter* requirement before his driving privileges were suspended for life. And the act of driving is not generally a crime. Moreover, we have previously held that the suspension of driving privileges has a purpose other than punishment, i.e., the protection of the public. Nor does a lifetime suspension seem excessive in light of Hazelwood's repeated traffic violations. Thus, even under the factors listed in Jensen and Wallace, we would conclude that the suspension of Hazelwood's driving privileges is not a punishment.